1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert J. Tuerck, State Bar No. 255741
JACKSON & TUERCK
429 Main Street, Suite C
P.O. Box 148
Quincy, CA 95971
Tel: (530) 283-0406
Fax: (530) 283-0416
E-mail: bob@jacksontuerck.com

Andrew L. Packard, State Bar Number 168690
Erik M. Roper, State Bar No. 259756
LAW OFFICES OF ANDREW L. PACKARD
100 Petaluma Boulevard, Suite 301
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (707) 763-9227
E-mail: Andrew@PackardLawOffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a nonprofit corporation )<br><br>Plaintiff, )<br><br>v. )<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, a political subdivision of the State of California, MIKE CRUMP, an individual, and SHAWN H. O'BRIEN, an individual )<br><br>Defendants, | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA"), by and

through its counsel, hereby alleges:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                              1

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. Section 1251, *et seq*. (the "Clean Water Act" or "the Act") against Butte County Department of Public Works, Mike Crump, and Shawn H. O'brien (hereafter "Defendants"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. § 1319(d), 1365(a) (civil penalties).

2.      On or about September 29, 2010, Plaintiff provided notice of Defendants' violations of the Act, and of its intention to file suit against Defendants, to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"); the U.S. Attorney General; and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of CSPA's notice letter is attached as Exhibit A, and is incorporated by reference.

3.      More than sixty days have passed since notice was served on Defendants and the State and federal agencies. Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4.      Venue is proper in the Eastern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located

1  within this judicial district. Pursuant to Local Rule 120(d), intra-district venue is proper in

2  Sacramento, California because the source of the violations is located within Butte County.

3  **II.    INTRODUCTION**

4         5.      This complaint seeks relief for Defendants' discharges of pollutants from an

5  approximately 189 acre landfill facility ("the Facility") owned and/or operated by Defendants.

6  The Facility discharges surface water to Butte Creek. Butte Creek is a tributary to the

7  Sacramento River, and the Sacramento-San Joaquin Delta. Defendants' discharges of pollutants

8  from the Facility are in violation of the Act and the State of California's General Industrial

9  Permit for storm water discharges, State Water Resources Control Board ("State Board") Water

10  Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92- 12-DWQ and

11  Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System

12  ("NPDES") General Permit No. CAS000001 (hereinafter "General Permit" or "Permit").

13  Defendants' violations of the filing, monitoring, reporting, discharge and management practice

14  requirements, and other procedural and substantive requirements of the General Permit and the

15  Act are ongoing and continuous.

16         6.      The failure on the part of industrial facility operators such as Defendants to

17  comply with the General Permit is recognized as a significant cause of the continuing decline in

18  water quality of these receiving waters. The general consensus among regulatory agencies and

19  water quality specialists is that storm water pollution amounts to more than half the total

20  pollution entering the marine environment each year. With every rainfall event, hundreds of

21  thousands of gallons of polluted storm water originating from industrial facilities discharge to

22  Butte Creek, the Sacramento River, and the Sacramento-San Joaquin Delta.

23  **III.    PARTIES**

24         7.      Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

25  ("CSPA") is a non-profit public benefit corporation organized under the laws of the State of

26  California with its main office in Stockton, California. CSPA has approximately 2,000

27  members who live, recreate and work in and around waters of the State of California, including

28

the Feather River, the Sacramento River, and the Sacramento-San Joaquin Delta. CSPA is dedicated to the preservation, protection, and defense of the environment, and the wildlife and the natural resources of all waters of California. To further these goals, CSPA actively seeks federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.     Members of CSPA reside in California and use and enjoy California's numerous rivers for recreation and other activities. Members of CSPA use and enjoy the waters of the Butte Creek, the Sacramento River, and the Sacramento-San Joaquin Delta, into which Defendants have caused, are causing, and will continue to cause, pollutants to be discharged. Among other things, members of CSPA use these areas to fish, sail, boat, kayak, swim, bird watch, view wildlife and engage in scientific study, including monitoring activities. Defendants' discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendants' ongoing failure to comply with the Clean Water Act. The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities.

9.     Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

10.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Butte County Department of Public Works is a political subdivision organized under the laws of the State of California.

11.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Mike Crump, is the Director of the Neal Road Landfill & Waste Facility, and that Defendant Shawn H. O'Brien is the Facility Operator, and that in these capacities they direct the operations and maintenance of the Facility. Accordingly, Defendants own and/or operate the Facility.

**IV.     STATUTORY BACKGROUND**

12.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. 33 U.S.C. §1342(p). States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342.

14.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

15.     The State Board elected to issue a statewide general permit for industrial discharges. The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

16.     The General Permit contains certain absolute prohibitions. Discharge Prohibition A(1) of the General Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by an NPDES permit, to the waters of the United States. Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment. Receiving Water Limitation C(2) of the

1    General Permit prohibits storm water discharges that cause or contribute to an exceedance of

2    any applicable water quality standards contained in a Statewide Water Quality Control Plan or

3    the applicable Regional Board's Basin Plan.

4          17.    In addition to absolute prohibitions, the General Permit contains a variety of

5    substantive and procedural requirements that dischargers must meet. Facilities discharging, or

6    having the potential to discharge, storm water associated with industrial activity that have not

7    obtained an individual NPDES permit must apply for coverage under the State's General Permit

8    by filing a Notice of Intent ("NOI"). The General Permit requires existing dischargers to file

9    their NOIs before March 30, 1992.

10         18.    Effluent Limitation B(3) of the General Permit requires dischargers to reduce or

11   prevent pollutants in its storm water discharges through implementation of the Best Available

12   Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and

13   the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. BAT

14   and BCT include both nonstructural and structural measures. General Permit, Section A(8).

15         19.    The EPA has established Benchmark Levels as guidelines for determining

16   whether a facility discharging industrial storm water has implemented the requisite BAT and

17   BCT. 65 Fed. Reg. 64746, 64767 (Oct. 30, 2000). The following benchmarks have been

18   established for pollutants discharged by Defendants: pH – 6.0-9.0; total suspended solids (TSS)

19   – 100 mg/L; oil and grease (O&G) – 15.0 mg/L; iron (Fe) – 1.0 mg/L; nitrate + nitrite nitrogen

20   (N+N) – 0.68 mg/L, and magnesium (Mg) – 0.0636 mg/L. The State Water Quality Control

21   Board has proposed adding a benchmark level for specific conductance of 200 μmhos/cm.

22         20.    Dischargers must develop and implement a Storm Water Pollution Prevention

23   Plan ("SWPPP") before October 1, 1992. The SWPPP must comply with the BAT and BCT

24   standards. (Section B(3)). The SWPPP must include, among other elements: (1) a narrative

25   description and summary of all industrial activity, potential sources of pollutants and potential

26   pollutants; (2) a site map showing facility boundaries, the storm water conveyance system,

27   associated points of discharge, direction of flow, areas of industrial activities, and areas of

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                          6

1  actual and potential pollutant contact; (3) a description of storm water management practices,

2  best management practices ("BMPs") and preventive maintenance undertaken to avoid storm

3  water contamination that achieve BAT and BCT; (4) the location where Significant Materials

4  are being shipped, stored, received and handled, as well as the typical quantities of such

5  materials and the frequency with which they are handled; (5) a description of potential pollutant

6  sources including industrial processes, material handling and storage areas, dust and particulate

7  generating activities; (6) a summary of storm water sampling points; (7) a description of

8  individuals and their responsibilities for developing and implementing the SWPPP (Permit,

9  Section A(3)); (8) a description of potential pollutant sources including industrial processes,

10  material handling and storage areas, and dust and particulate generating activities; (9) a

11  description of significant spills and leaks; (10) a list of all non-storm water discharges and their

12  sources, and (11) a description of locations where soil erosion may occur (Section A(6)). The

13  SWPPP must also include an assessment of potential pollutant sources at the Facility and a

14  description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants

15  in storm water discharges and authorized non-storm water discharges, including structural

16  BMPs where non-structural BMPs are not effective (Section A(7), (8)).

17       21.     The SWPPP must be re-evaluated annually to ensure effectiveness and must be

18  revised where necessary. (Section A(9),(10)). Section C(3) of the General Permit requires a

19  discharger to prepare and submit a report to the Regional Board describing changes it will

20  make to its current BMPs in order to prevent or reduce any pollutant in its storm water

21  discharges that is causing or contributing to an exceedance of water quality standards. Once

22  approved by the Regional Board, the additional BMPs must be incorporated into the Facility's

23  SWPPP. The report must be submitted to the Regional Board no later than 60 days from the

24  date the discharger first learns that its discharge is causing or contributing to an exceedance of

25  an applicable water quality standard. Section C(4)(a). Section C(11)(d) of the General Permit's

26  Standard Provisions also requires dischargers to report any noncompliance. *See also* Section

27  E(6). Lastly, Section A(9) of the General Permit requires an annual evaluation of storm water

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    7

1   controls including the preparation of an evaluation report and implementation of any additional

2   measures in the SWPPP to respond to the monitoring results and other inspection activities.

3        22.   The General Permit requires dischargers to eliminate all non-storm water

4   discharges to storm water conveyance systems other than those specifically set forth in Special

5   Condition D(1)(a) of the General Permit and meeting each of the conditions set forth in Special

6   Condition D(1)(b).

7        23.   The General Permit requires dischargers commencing industrial activities before

8   October 1, 1992 to develop and implement an adequate written Monitoring and Reporting

9   Program no later than October 1, 1992. Existing facilities covered under the General Permit

10  must implement all necessary revisions to their monitoring programs no later than August 1,

11  1997.

12       24.   The General Permit also requires dischargers to submit yearly "Annual Reports"

13  to the Regional Board. As part of their monitoring program, dischargers must identify all storm

14  water discharge locations that produce a significant storm water discharge, evaluate the

15  effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control

16  measures set out in the SWPPP are adequate and properly implemented. Dischargers must then

17  conduct visual observations of these discharge locations for at least one storm per month during

18  the wet season (October through May) and record their findings in their Annual Report.

19  Dischargers must also collect and analyze storm water samples from at least two storms per

20  year. Section B requires dischargers to sample and analyze during the wet season for basic

21  parameters such as pH, total suspended solids ("TSS"), specific conductance, and total organic

22  content ("TOC") or oil and grease, certain industry-specific parameters, and toxic chemicals

23  and other pollutants likely to be in the storm water discharged from the facility. Dischargers

24  must also conduct dry season visual observations to identify sources of non-storm water

25  pollution. The monitoring and reporting program requires dischargers to certify, based upon the

26  annual site inspections, that the facility is in compliance with the General Permit and report any

27  non-compliance, and contains additional requirements as well.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    8

25.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.

26.     The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Pollutants are defined to include, among other examples, industrial waste, chemical wastes, biological materials, heat, rock, and sand discharged into water. 33 U.S.C. § 1362(6).

27.     A point source is defined as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

28.     "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7). Waters of the United States include tributaries to waters that are navigable in fact. Waters of the United States also include man-made water bodies that are tributary to waters that are navigable in fact, as well as ephemeral waters that are tributary to waters that are navigable in fact.

29.     Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $32,500 per day for violations that occurred between March 15, 2004 and January 12, 2009, and an assessment of civil penalties of up to $37,500 per day for violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

30.     The Regional Board has established water quality standards for the Sacramento River, and the Sacramento-San Joaquin Delta in the Water Quality Control Plan for the Sacramento River and San Joaquin River Basins, generally referred to as the Basin Plan.

31.     The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life."

32.     The Basin Plan establishes a standard for electrical conductivity in the Delta of 0.7 µmhos/cm from April 1 through August 31 and 1.0 µmhos/cm from September 1 through March 31.

33.     The Basin Plan provides that "[w]aters shall not contain chemical constituents in concentrations that adversely affect beneficial uses."

34.     The Basin Plan provides that "[a]t a minimum, water designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the maximum contaminant levels (MCLs)." The waters of the Sacramento River and the Delta have been designated by the State Board for use as municipal and domestic supply.

V.      **STATEMENT OF FACTS**

35.     Defendants operate an approximately 189 acre landfill facility located at 1023 Neal Road, in Chico, California (the "Facility"). The Facility discharges surface water into Butte Creek. Butte Creek is a tributary to the Sacramento River, and the Sacramento-San Joaquin Delta.

36.     Defendants filed a Notice of Intent to comply with the terms of the General Industrial Storm Water Permit on or about March 3, 1992.

37.     The Facility is classified under Standard Industrial Classification ("SIC") Code 4953 ("Landfill Facility"). The main industrial activities occurring at the Facility include dispose of municipal solid waste and inert industrial waste. Other activities at the Facility include the use, storage, and maintenance of motorized vehicles.  Many of these activities occur outside in areas that are exposed to storm water and storm flows due to the lack of overhead coverage, functional berms and other storm water controls. Plaintiff is informed and believes

1    that Defendants' storm water controls, to the extent any exist, fail to achieve BAT and BCT

2    standards.

3        38.    The management practices at the Facility are wholly inadequate to prevent the

4    sources of contamination described above from causing the discharge of pollutants to waters of

5    the United States and fail to meet BAT and BCT. The Facility lacks essential structural controls

6    such as grading, berming and roofing to prevent rainfall and storm water flows from coming

7    into contact with these and other sources of contaminants, thereby allowing storm water to flow

8    over and across these materials and become contaminated prior to leaving the Facility. In

9    addition, the Facility lacks structural controls to prevent the discharge of water once

10   contaminated. The Facility also lacks an adequate filtration system to treat water once it is

11   contaminated.

12       39.    Vehicle traffic at the Facility tracks dust and particulate matter, increasing the

13   discharges of polluted water and mud into waters of the United States.

14       40.    During rain events storm water laden with pollutants flows from the Facility into

15   Butte Creek, which ultimately flows to the Sacramento River and the Sacramento-San Joaquin

16   Delta.

17       41.    Information available to Plaintiff indicates that as a result of these practices,

18   storm water containing pollutants harmful to fish, plant and bird life, and human health are

19   being discharged from the Facility directly to these waters during significant rain events.

20       42.    Butte Creek, the Sacramento River, and the Sacramento-San Joaquin Delta are

21   waters of the United States.

22       43.    Information available to Plaintiff indicates that Defendants have not fulfilled the

23   requirements set forth in the General Permit for discharges from the Facility due to the

24   continued discharge of contaminated storm water.

25       44.    Plaintiff is informed and believes, and thereupon alleges, that Defendants have

26   failed to develop and implement an adequate Storm Water Pollution Prevention Plan.

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                          11

45.     Information available to Plaintiff indicates the continued existence of unlawful storm water discharges at the Facility.

46.     Plaintiff is informed and believes, and thereupon alleges, that Defendants have failed to develop and implement adequate monitoring, reporting and sampling programs for the Facility.  Plaintiffs are informed and believe, and thereupon allege, that Defendants have not sampled with adequate frequency, have not conducted visual monitoring, and have not analyzed the samples collected for the required pollutant parameters.

47.     Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discharges of Contaminated Storm Water in
### Violation of Permit Conditions and the Act
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

48.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

49.     Discharge Prohibition A(2) of the General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitations C(1) and C(2) of the General Permit require that storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

50.     Plaintiff is informed and believes, and thereupon alleges, that since at least October 1, 1992, Defendants have been discharging polluted storm water from the Facility to Butte creek, the Sacramento River, and the Sacramento-San Joaquin Delta in violation of the General Permit.

51.     During every significant rain event, storm water flowing over and through materials at the Facility becomes contaminated with pollutants, flowing untreated from the Facility to Butte Creek, the Sacramento River, and the Sacramento-San Joaquin Delta.

52.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing pollution and contamination of the waters of the United States in violation of Discharge Prohibition A(2) of the General Permit.

53.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit.

54.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are contributing to the violation of the applicable water quality standards in the Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

55.     Plaintiff is informed and believes, and thereupon alleges, that every day since at least March 30, 1992, Defendants have discharged and continue to discharge polluted storm water from the Facility in violation of the General Permit. Every day Defendants have discharged and continue to discharge polluted storm water from the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**Failure to Develop and Implement an
Adequate Storm Water Pollution Prevention Plan
(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

56.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

57.     Section A and Provision E of the General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP") no later than October 1, 1992.

58.     Defendants have failed to develop and implement an adequate SWPPP for the Facility. Defendants' ongoing failure to develop and implement an adequate SWPPP for the Facility is evidenced by, *inter alia*, Defendants' outdoor storage of industrial materials, including waste materials, without appropriate best management practices; the continued exposure of significant quantities of industrial material to storm water flows; the failure to either treat storm water prior to discharge or to implement effective containment practices; and the continued discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark values and other applicable water quality standards.

59.     Defendants have further failed to update the Facility's SWPPP in response to the analytical results of the Facility's storm water monitoring as required by the General Permit.

60.     Each day since October 1, 1992 that Defendants have failed to develop and implement an adequate SWPPP for the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

61.     Defendants have been in violation of the SWPPP requirement every day since at least October 1, 1992.  Defendants continue to be in violation of the Act each day that they fail to develop and fully implement an adequate SWPPP for the Facility.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Failure to Develop and Implement the Best Available**
**And Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

62.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

63.     The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through

1   implementation of BAT for toxic and nonconventional pollutants and BCT for conventional

2   pollutants.

3        64.     Defendants have failed to implement BAT and BCT at the Facility for its

4   discharges of pH, total suspended solids, oil and grease, iron, and unmonitored pollutants in

5   violation of Effluent Limitation B(3) of the General Permit.

6        65.     Each day since September 29, 2005 that Defendants have failed to develop and

7   implement BAT and BCT in violation of the General Permit is a separate and distinct violation

8   of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

9        66.     Defendants have been in violation of the BAT and BCT requirements every day

10  since at least September 29, 2005.  Defendants continue to be in violation of the BAT and BCT

11  requirements each day that they fail to develop and fully implement an adequate BAT and BCT

12  for the Facility.

13       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

14  

**FOURTH CAUSE OF ACTION**
**Failure to Develop and Implement an**
**Adequate Monitoring and Reporting Program**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

15

16

17       67.     Plaintiff incorporates the allegations contained in the above paragraphs as

18  though fully set forth herein.

19       68.     Section B of the General Permit requires dischargers of storm water associated

20  with industrial activity to develop and implement a monitoring and reporting program

21  (including, among other things, sampling and analysis of discharges) no later than October 1,

22  1992.

23       69.     Defendants have failed to develop and implement an adequate monitoring and

24  reporting program for the Facility. Defendants' ongoing failures to develop and implement

25  adequate monitoring and reporting programs are evidenced by, *inter alia*, their continuing

26  failure to collect and analyze storm water samples from all discharge locations, their continuing

27  failure to analyze storm water samples for all toxic chemicals and other pollutants likely to be

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    15

present in the Facility's storm water discharges in significant quantities, and/or their failure to file required Annual Reports with the Regional Board which provide required information concerning the Facility's visual observations and storm water sampling and analysis.

70.     Each day since October 1, 1992 that Defendants have failed to develop and implement an adequate monitoring and reporting program for the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**False Certification of Compliance in Annual Report**
**(Violations of Permit conditions and the Act 33 U.S.C. §§ 1311, 1342)**

71.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

72.     As required by section B(14) of the General Permit, Defendants have submitted signed annual reports certifying that the Facility is in compliance with the General Permit each of the last five years.

73.     Defendants have falsely certified compliance with the General Permit in each of the Annual Reports submitted to the Regional Board since at least September 29, 2005.

74.     Each day since at least September 29, 2005, that Defendants have falsely certified compliance with the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendants continue to be in violation of the General Permit's verification requirement each day that they maintain their false certification of its compliance with the General Permit.

**VII. RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.     Declare Defendants to have violated and to be in violation of the Act as alleged herein;

1        b.      Enjoin Defendants from discharging pollutants from the Facility and to the

2    surface waters surrounding and downstream from the Facility;

3        c.      Enjoin Defendants from further violating the substantive and procedural

4    requirements of the General Permit;

5        d.      Order Defendant to immediately implement storm water pollution control and

6    treatment technologies and measures that are equivalent to BAT or BCT and prevent pollutants

7    in the Facility's storm water from contributing to violations of any water quality standards;

8        e.      Order Defendant to comply with the Permit's monitoring and reporting

9    requirements, including ordering supplemental monitoring to compensate for past monitoring

10   violations;

11       f.      Order Defendants to prepare a SWPPP consistent with the Permit's requirements

12   and implement procedures to regularly review and update the SWPPP;

13       g.      Order Defendants to provide Plaintiff with reports documenting the quality and

14   quantity of their discharges to waters of the United States and their efforts to comply with the

15   Act and the Court's orders;

16       h.      Order Defendants to pay civil penalties of $32,500 per day per violation for all

17   violations occurring after March 15, 2004, and $37,500 per day per violation for all violations

18   occurring after January 12, 2009, for each violation of the Act pursuant to Sections 309(d) and

19   505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1 - 19.4 (pp. 200-

20   202) (Dec. 31, 1996);

21       i.      Order Defendants to take appropriate actions to restore the quality of navigable

22   waters impaired by their activities;

23       j.      Award Plaintiffs' costs (including reasonable attorney, witness, and consultant

24   fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

25   /

26   /

27   //

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                              17

1   k.  Award any such other and further relief as this Court may deem appropriate.

2

3 Dated: November 29, 2010

4

5         Respectfully submitted,

6         **JACKSON & TUERCK**

7

8       By:   /s/ Robert J. Tuerck

9          Robert J. Tuerck
           Attorneys for Plaintiff

10        CALIFORNIA SPORTFISHING
           PROTECTION ALLIANCE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28